# VIRGIL FOSTER v. HERBISON CONSTRUCTION COMPANY.

## 115 N. W. (2d) 915.

### June 15, 1962—No. 38,320.

*Mahoney & Mahoney,* for appellant.
*Smith & McRae,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the trial court vacating a judgment in favor of defendant and granting a new trial to plaintiff.

The facts may be briefly stated. On April 25, 1956, defendant entered into a contract with the State of Minnesota for the repair of Trunk Highway No. 2 between Cass Lake and Bemidji. Some of the work consisted of "lifting" the roadway in places where it had settled by placing on the roadway 3-inch layers of gravel which were com-

pacted by rubber-tired rollers preparatory to applying a blacktop surface when it had reached the proper height. On the evening and night of July 7, 1956, there was a heavy rainfall in the area where this work was being done. It was necessary to keep the road open for the traveling public. Rain and travel on the partially completed highway caused the formation of "chuckholes," which became filled with water. In order to dry out the gravel, a windrow had been created by blading the gravel to one side of the highway.

On the morning of July 8, plaintiff entered the highway from a side road with a truck. He was engaged in picking up milk cans from farmers along a route which he followed daily. In driving down the highway he noticed chuckholes and places where water covered the surface. He testified that he was driving about 25 to 30 miles per hour down the road near the point of the accident which followed and that he encountered a series of chuckholes full of water. He slowed down his truck but suddenly was thrown into the windrow of gravel on the side of the highway. His truck tipped over, causing damage to the truck and personal injuries to plaintiff.

Plaintiff's action was predicated upon the negligence of defendant in failing to maintain the highway. The specifications, which are a part of the contract between defendant and the State of Minnesota, contain a provision that defendant would—

"* * * so conduct his operations as to cause the minimum inconvenience to traffic and shall provide, and continually maintain a smooth and drained roadway over which vehicular traffic can move safely and under its own power, regardless of weather conditions, * * *. This may require maintenance at night."

At the trial, this contract was offered in evidence by plaintiff and excluded by the trial court upon defendant's objection that it was immaterial.

Defendant, in addition to denying negligence, interposed a defense of contributory negligence on the part of the plaintiff. The issues of ordinary negligence, proximate cause, and contributory negligence were submitted to the jury on instructions as to which no error has been assigned. The jury returned a verdict for defendant. Thereafter a

motion for a new trial was heard by the court on April 6, 1959. On August 6, 1959, the court entered its order granting a new trial and in its memorandum assigned as the reason therefor failure to admit the contract mentioned above. On motion of defendant, based on the claim that the court lacked jurisdiction to grant the motion at the time it was granted, the court, on November 4, 1960, set aside its order granting a new trial. Judgment was thereafter entered on November 7, 1960. On November 9, 1960, the court, on its own motion, set aside said judgment and again granted a new trial on the grounds and for the reason that the verdict is contrary to law and that the interests of justice require a new trial of said action because the court did not properly rule upon the admission of the contract referred to above. This appeal is from such order.

Ordinarily an order granting a new trial based upon the grounds specified by the court would not be appealable. However, an anomaly in our appellate procedure exists in that if an order sets aside a judgment and then grants a new trial it becomes appealable. Kjeldergaard v. Gulliford, 260 Minn. 234, 109 N. W. (2d) 586; Satter v. Turner, 257 Minn. 145, 100 N. W. (2d) 660; Ayer v. Chicago, M. St. P. & P. R. Co. 189 Minn. 359, 249 N. W. 581. It follows that, even if the order granting a new trial here would not have been appealable in the absence of a vacation of the judgment, it is appealable in view of the fact that such judgment was vacated.

It is defendant's contention that the court did not err in excluding the contract between the State of Minnesota and defendant and that, in any event, plaintiff was guilty of contributory negligence as a matter of law.

■ We should first dispose of defendant's claim that plaintiff was guilty of contributory negligence as a matter of law. Inasmuch as the jury returned a general verdict, it is impossible to know whether the result is based on a finding that plaintiff was guilty of contributory negligence or that defendant was not guilty of any negligence. Hence, if the evidence presented a jury issue on the question of plaintiff's contributory negligence, we must determine whether the alleged error in excluding the contract provision quoted above was so prejudicial as to justify the court's order granting a new trial.

It is, of course, elementary that ordinarily the question of plaintiff's contributory negligence is for the jury. We have frequently held that before we can hold that plaintiff's contributory negligence appears as a matter of law the evidence must be so conclusive as to leave no room for differences of opinion among reasonable persons.[1] If, from the evidence, different inferences may reasonably be drawn, it is for the jury to decide which inference to draw.

The evidence fairly establishes that warning signs had been placed at each end of the construction zone on this highway. Plaintiff was familiar with the road and knew that it was under construction. He proceeded about 180 yards in an area in which chuckholes had developed as a result of the recent rain and the ensuing traffic. In a pretrial deposition plaintiff testified as follows:

"Well, I was going along in high and all at once it started getting too rough. I started hitting some places where it was just—well, we kind of come down a hill and all the water we had and this big ridge of dirt that was there—that was left on the shoulder of the road, held the water in the road so you couldn't see no chuckholes, all you could see was just water in these holes and I started hitting some of those chuckholes and it felt like I was going too fast so I put it in second gear and all at once I hit about three or four bigger chuckholes and it snapped my front spring and—

"Q.   You lost control of it and that is how this accident happened?
"A.   Yes."

There was much conflicting evidence on the existence of warning signs at or near the place where the accident happened. Plaintiff's main defense against a charge of contributory negligence is that, while he could see water standing on the road and knew that chuckholes had been created by traffic, he had no way of knowing that the holes into which he drove were as deep as they were. Consequently, he contends, he could not have anticipated the hazard that existed. It is not necessary to state the evidence in greater detail.

While the evidence on the issue of contributory negligence is close,

---

[1] 13B Dunnell, Dig. (3 ed.) §§ 7033, 7034.

it is sufficiently conflicting to create a question for the jury's determination. It is not so conclusive that we can hold as a matter of law that plaintiff should have anticipated the dangers existing in driving into the area in the manner and at the speed he did.

■ The more difficult question is whether the exclusion of the contract provision quoted above constitutes such prejudicial error as to justify a new trial. The court fully instructed the jury on the usual rules pertaining to the establishment of common-law negligence. No assignment of error is based on the court's instruction.

On the question of the admissibility of such contract provisions, the authorities are hopelessly divided. Many and various reasons are given for excluding or admitting such contract provisions. It would serve no useful purpose for us to review them here as that has been adequately done in Annotations, 38 A. L. R. 403 and 69 A. L. R. 522. In the fairly recent case of Larson v. Heintz Const. Co. 219 Ore. 25, 345 P. (2d) 835 (1959), the Oregon court has quite exhaustively reviewed many of the cases on both sides of the question. After so doing, the court said (219 Ore. 52, 345 P. [2d] 848):

"* * * we think that a construction contract which requires the use of warning signals is, by the weight of reason and authority, admissible in evidence against the contractor. We prefer not to ground our decision on a ruling that we have here a third party beneficiary contract and that the standard of care imposed by the contract supersedes that required by the common law. This is an action for damages arising out of negligence, and the contractor's duty even in the face of such a contract as this remains a duty to use reasonable care. But reasonableness depends on the circumstances, and here the contract was a circumstance. It is evidence of what the contractor conceived the measure of his duty to be. Of course, the fact that one sets for himself exacting standards of conduct higher than the law requires will not in the ordinary case expose him to the danger of liability at the suit of one injured by non-observance of those exacting standards. But set in the context of this litigation, simply as a matter of common sense it is not unfair to let the jury consider the contract. * * * The provision was put into the contract with the safety of the motoring

public foremost in mind. It does not substantially increase the legally imposed duty of the contractor to give notice of traps and obstructions. The purpose of the provision appears to have been to emphasize the measures of safety which the contractor was expected to observe while engaged in the work. It put the standard of care into bas-relief. It was adequate warning that some liability would attach somewhere for non-observance. The contractor undertook the work knowing what was expected of him, and it is fair to let the contract enter into the jury's consideration of what was reasonable under the circumstances."

In granting a new trial based on the alleged error in excluding this contract provision, the trial court relied largely on Rengstorf v. Winston Brothers Co. 167 Minn. 290, 208 N. W. 995. In that case the defendant had constructed a high embankment as part of a state trunk highway. Plaintiff's decedent was a passenger in a horse-drawn wagon being driven over the embankment. One of the horses stumbled and fell, dragging his teammate and the wagon and its occupants down the embankment. While we held that liability existed only for the part of the work which defendant was under obligation to perform, the following statement, which is dicta, is to be found in the opinion (167 Minn. 292, 208 N. W. 996):

"* * * The contract was between defendant and the state. The deceased was not a party thereto and his personal representative cannot predicate any right thereon. To that extent the rule of Winterbottom v. Wright, 10 M. & W. 107 and Heaven v. Pender, L. R. 9 Q. B. Div. 302, remains undoubted law.

"The only duty of defendant with which plaintiff is now concerned was to execute the work with due care to prevent injury to those lawfully using it pending its construction. The provisions of the contract are therefore material only to the extent that they impose obligations for the benefit of users of the road, and so may have something to say to the question of due care. Otherwise the contract is immaterial. It is not the basis of liability but merely a fact for consideration."

The older case of Baumgartner v. City of Mankato, 60 Minn. 244, 62 N. W. 127, indicates that contract liabilities arising between a street railway company and a city by reason of a city ordinance could

be considered in determining whether the failure of one of the contracting parties to comply with the ordinance was negligence as to a member of the public injured thereby.

Without getting into the peripheral area of rights acquired by the traveling public under such contract provisions, it would seem that when a contractor undertakes to maintain a road under construction—open to the public during the construction period—in such a way as to insure the safety of those traveling over the construction zone, such agreement has some evidentiary value in establishing what is due care. Both contracting parties have agreed on a course of conduct deemed essential for the protection of those using the highway. It is unnecessary to hold that those injured as a result of the contractor's failure to do that which he agreed with the state he would do have any rights under the contract. A recognition by the contracting parties that certain acts should be done to protect the traveling public—followed by failure to perform such acts—does however have some bearing on the establishment of negligence. The ultimate question still is: What would an ordinarily prudent person have done under the same or similar circumstances? But here we might well say that an ordinarily prudent person, having agreed to perform certain acts for the protection of the public, would have recognized the necessity of complying therewith and that, when injury results from a condition which develops due to the failure to perform according to the contract, it could be found that the failure to perform constitutes a lack of due care. We think that, whatever the reasoning may be, the better rule, and that now followed by the weight of authority, is that such contract provisions should be admitted for the jury's consideration, together with all other evidence, in determining the question of defendant's negligence.

While the reasoning under which many of the older cases have rejected similar contract provisions in a negligence action varies, in the final analysis the rejection is probably based on the theory that a contract between A and B creates no duty by B toward C. The question is really not whether the contract between the state and defendant in this case creates a duty on the part of defendant toward plaintiff,

the injured party. When we look to the contract as the source of the duty we run into many difficulties, not the least of which has been the old concept of lack of privity between the contracting parties and an injured third party who is not a party to the contract.[2] But, if we concede that the defendant already owes plaintiff the duty of exercising due care and the contract between the state and defendant is only one of the links in the chain of evidence to establish what that due care is, we avoid some of these difficulties. It is in this area of evidence that the contract should be admissible—not to establish that defendant owes a duty to plaintiff, but to help establish what the already existing duty is.

As a word of caution, it should be mentioned that many provisions of the contract have nothing to do with the question of negligence. Only those parts setting forth the requirements that would affect the traveling public should be admitted.

The question remains: Was the exclusion of the contract provision so prejudicial in this case as to warrant a new trial? While the question is close, in view of the court's general instruction on negligence it is sufficiently doubtful whether the jury's verdict would have been otherwise if they had been permitted to consider the contract that we should not interfere with the trial court's decision that there should be a new trial.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

---

[2]See, La Mourea v. Rhude, 209 Minn. 53, 295 N. W. 304; 25 Minn. L. Rev. 523.