PRESSER, Plaintiff and Respondent, v. SIESEL CONSTRUCTION COMPANY, Defendant and Appellant: WESTMONT ENGINEERING COMPANY, Impleaded Defendant and Cross Appellant.

*January 9—February 5, 1963.*

56

For the appellant Siesel Construction Company there were briefs by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Kurt H. Frauen* and *Donald L. Johnson* of counsel, all of Milwaukee, and oral argument by *Mr. Frauen* and *Mr. Johnson.*

For the appellant Westmont Engineering Company there was a brief and oral argument by *Paul C. Konnor,* attorney, and *Stephen R. Miller* of counsel, both of Milwaukee.

For the respondent there was a brief by *Porter, Quale, Porter & Zirbel* of Milwaukee, attorneys, and *Irving W. Zirbel* of counsel, and oral argument by *Irving W. Zirbel.*

HALLOWS, J. Since this case involves two appeals and a cross appeal, we will discuss each appeal separately.

### Siesel's Appeal.

The basis of Siesel's liability as found by the verdict was negligence in the manner of performing the contract with the government. Siesel contends it, as a general contractor subcontracting all the work, had only a common-law duty to warn of latent defects and not to place a barricade around the Nike elevator at the magazine level. There is a conflict of authorities whether the duty required for a negligence action can be predicated upon a contract. See Annos. 38 A. L. R. 403, 492, 493, and 69 A. L. R. 522. This court has

held the negligent performance or nonperformance of a duty created by a contract may constitute actionable negligence. *Colton v. Foulkes* (1951), 259 Wis. 142, 47 N. W. (2d) 901. Restatement, 2 Torts, p. 1030, sec. 385. We do not accept the rationale of *Foster v. Herbison Construction Co.* (1962), 263 Minn. 63, 115 N. W. (2d) 915, and *Larson v. Heintz Construction Co.* (1959), 219 Or. 25, 345 Pac. (2d) 835, that the contract is only one factor bearing on the question of ordinary care under the circumstances. It imposes the standard of care and the obligation to the plaintiff. A general contractor by contract may assume a duty of care for the benefit of others than the promisee over and above such common-law liability for negligence which would otherwise be applicable to the facts. The contract between Siesel and the government in Article 28, Accident Prevention (A), obligated the contractor to comply with all pertinent provisions of the "General Safety Requirements" manual in order to provide for the safety of the employees and other persons.

These duties thus assumed by Siesel as general contractor cannot be delegated or assigned by subcontracting the work. The contract provided in Article 28 (D) that compliance with the provisions of the article on accident prevention by subcontractors was the responsibility of the contractor. While Siesel might protect itself financially by indemnity agreements with its subcontractors, it could not divest or rid itself of its primary obligation or immunize itself from liability. The assumption of similar duties by the subcontractors does not relieve Siesel.

The scope of Siesel's duty to the plaintiff is in sharp dispute. Siesel contends there is no requirement in the contract to provide a barricade for the Nike elevator pit. The plaintiff contends the contract does so provide and a barricade is a reasonable requirement for the safety of workers and others. The safety requirements called for by the General Safety Requirements manual include:

"20–21. . . .

"f. During construction all openings—floor, roof, stairwell, shaftways, pits, and similar unguarded locations shall be provided with an inclosure guard securely anchored in the opening (plate 19)."

Such requirements are pertinent provisions and applicable to the contract entered into by Siesel and call for some kind of a barricade. It is contended the contract was modified by the conduct of the parties because no barricades were requested by the representatives of the government who knew of the condition. The safety manual designated certain representatives of the government to authorize adaptations of the requirements if a literal application of a requirement was impractical. Testimony was offered that a barricade was impractical, but no adaptation was authorized; nothing was authorized or done. The testimony falls short of showing by unequivocal conduct a modification of the contract or an interpretation that these safety requirements were not pertinent. See *Nelsen v. Farmers Mut. Automobile Ins. Co.* (1958), 4 Wis. (2d) 36, 90 N. W. (2d) 123.

We need not discuss whether the proper representatives of the government did not require barricades around the pit. The contract contemplated some type of barricade during construction to guard the pit when the Nike elevator was at ground level and Siesel's failure to provide the barricade was negligence as found by the jury. Citation of authority is not needed for the oft-quoted rule that the evidence must be viewed in the light most favorable to the verdict and if there is any credible evidence which under any reasonable view will sustain a verdict, which has the approval of the trial court, this court ought not upset it.

Siesel argues that whether or not it had a duty to erect barricades around the pit, there is no causal connection between the failure to do so and the plaintiff's injuries. Barricades, it is argued, might prevent a person from inadvertently

falling into the pit but would not prevent a person from intentionally walking past the barricade to get into the inclosure. The real cause of the accident, it is argued, is the fact the lights were out because, if they were on, the plaintiff would have seen the open pit. There was testimony an interlocking barricade could have been temporarily erected at a cost of $200, an insignificant sum considering the contract involved approximately $700,000. Whether it was necessary for Siesel to provide an interlocking door on the barricade need not be decided. The jury could have reasonably concluded any barricade would have jarred the plaintiff's preoccupation and focused his attention to the possible danger of the pit. A barricade itself would indicate there might be danger. Workmen preoccupied with their immediate task frequently lose an awareness of surrounding danger. One purpose of a safety device is to offset such natural inattention to environment. It cannot be argued to certainty that the plaintiff would have disregarded a barricade if his attention had been focused upon the possible danger of which the presence of the barricade was to forewarn. A jury question was presented. The finding of causal negligence on the part of Siesel is sustained by credible evidence.

We must reject Siesel's contention that the plaintiff's negligence was an intervening and superseding cause of the accident and Siesel as a matter of public policy should be free from liability under the doctrine of *Pfeifer v. Standard Gateway Theater* (1952), 262 Wis. 229, 55 N. W. (2d) 29, and *Ryan v. Cameron* (1955), 270 Wis. 325, 71 N. W. (2d) 408. The defense of an intervening and superseding cause as such is not applied to the plaintiff's negligence. His causal negligence for his own safety is considered within the scope of the doctrine of contributory negligence, its relationship to causation and apportionment.

The contention is made the apportionment of negligence, 40 percent to the plaintiff and 60 percent to Siesel, cannot

be sustained as the plaintiff's contributory negligence was at least as great as Siesel's as a matter of law. Siesel's negligence cannot be diminished in degree by arguing that Westmont, the subcontractor, was negligent in not carrying out either Siesel's or its own duties under the subcontract. Westmont's negligence as the plaintiff's employer cannot be and is not an issue between it and its employee. True, the plaintiff was a foreman and had some general duties to watch out for the safety of his co-workers. However, his specific duties as foreman did not include all the duties Westmont had under the contract or statutes. Moreover, Siesel was the only one who could prescribe safety devices binding on all subcontractors. We cannot increase the plaintiff's negligence by imposing upon him a duty to provide barricades. It is, of course, true that ordinarily when one walks in the dark it requires a greater degree of effort to exercise care commensurate with this danger. Reliance is placed upon *McNally v. Goodenough* (1958), 5 Wis. (2d) 293, 92 N. W. (2d) 890, wherein this court held a frequenter was at least 50 percent negligent as a matter of law in walking through a poorly lighted hallway through an open door. In that case the plaintiff's attention was required to be concentrated upon finding his way out of the building. The case is not on all fours with the facts of the instant case. Here, the plaintiff was at work, knew the layout of his surroundings. He knew his toolbox was on the elevator floor close by. What the plaintiff did not know was that another workman in the plaintiff's absence had sent up the elevator exposing the pit and in one sense creating the danger. The preoccupation of a workman in the discharge of his duties should be considered in determining his percentage of negligence and the care required of him for his own safety. Taking the situation at the moment before the accident that the magazine room was constructed with a pit eight feet deep, that such pit was only exposed and dangerous when the elevator was at ground level and that it

was reasonable for the place to be in darkness as the plaintiff was following instructions not to hook up the welding machine without pulling the power switch, we have the question, whether the plaintiff was equally or more negligent in not ascertaining whether the elevator was at magazine level or in not taking more precautions in walking in the darkness than the general contractor was in not providing a barricade for the safety of employees and others. The jury did not think so and found the plaintiff 40 percent negligent. The question is a close one and we cannot hold as a matter of law the jury was wrong.

The last assigned error is the alleged prejudicial remark of counsel in informing the jury of the effect of a "No" answer concerning the inquiry of Siesel's negligence. Although on motions after verdict a new trial was asked on the general ground of prejudicial remarks of counsel, no specific error was pointed out to the trial court. Other objections to the argument of plaintiff's counsel were made. Objections to specific prejudicial remarks should be pointed out to the trial court on the motion for a new trial. Unless the trial court's attention is directed to alleged specific errors encompassed by the general ground stated in the motion for a new trial, the court must either search the record, which it has no duty to do, or the trial court is not given the opportunity to correct its error. Siesel has waived the objection. *Clements v. Mutual Service Casualty Ins. Co.* (1961), 13 Wis. (2d) 549, 109 N. W. (2d) 98; *Michalski v. Wagner* (1960), 9 Wis. (2d) 22, 100 N. W. (2d) 354; *Ferry v. State* (1954), 266 Wis. 508, 63 N. W. (2d) 741. See *Candrian v. Miller* (1898), 98 Wis. 164, 73 N. W. 1004.

Error is claimed in the trial court's failure to give instructions in respect to the duty of a general contractor who had sublet the work and the plaintiff's standard of care as a foreman and in walking in the dark. We have pointed out, Siesel's theory of its duty and the plaintiff's duty as a fore-

man was erroneous on the facts. The element of the plaintiff's walking in the dark was adequately covered in the court's instruction on the duty of a workman preoccupied with his work. No error was committed in refusing to instruct as requested.

### *Presser's Cross Appeal.*

Plaintiff cross-appeals from the trial court's order granting a nonsuit to his second cause of action, which alleged Siesel as general contractor violated the safe-place statute in respect to three safety orders. The trial court correctly held the two safety orders from the elevator code, 2 Wis. Adm. Code, secs. Ind 4.10 and 4.12, were not applicable. For some purposes the Nike elevator or hoist might be considered an elevator since it could be used as such. But the elevator code contemplates safety requirements of normal passenger and freight elevators and was not intended to apply to a military missile mechanism of the United States government. It would be stretching the word "elevator" beyond the breaking point to apply the safety code to these facts.

The other safety order, 2 Wis. Adm. Code, sec. Ind 1.11, providing that pits, openings in floors, etc., shall be guarded, applies to finished buildings. Prior to the construction work the Nike site was under the sole control of the government. It was not then a place of employment because no persons were employed for profit. Assuming the site became a place of employment because construction work was being done in its modification, the trial court correctly concluded that during the course of the modification the safety order did not apply and only the rules governing Safety in Construction, 3 Wis. Adm. Code, sec. Ind 35.001, applied. No breach of these rules is alleged.

The plaintiff argues he should not be held for contributory negligence in an action founded upon the safe-place statute and based on a violation of a safety order of the industrial

commission. He asks this court to overrule existing law that contributory negligence is a defense. *Gupton v. Wauwatosa* (1960), 9 Wis. (2d) 217, 101 N. W. (2d) 104; *Powless v. Milwaukee County* (1959), 6 Wis. (2d) 78, 94 N. W. (2d) 187; *Paluch v. Baldwin Plywood & Veneer Co.* (1957), 1 Wis. (2d) 427, 85 N. W. (2d) 373. The theory of plaintiff's argument is a violation of a safety order somehow changes the nature of the cause of action and the liability of the defendant is not based on negligence. We have consistently held sec. 101.06 of the safe-place statute did not create a new cause of action for negligence but added on a greater degree of care than is required at common law. *Lealiou v. Quatsoe* (1961), 15 Wis. (2d) 128, 112 N. W. (2d) 193; *Krause v. Veterans of Foreign Wars Post No. 6498* (1960), 9 Wis. (2d) 547, 101 N. W. (2d) 645; *Ermis v. Federal Windows Mfg. Co.* (1959), 7 Wis. (2d) 549, 97 N. W. (2d) 485. The violation of a safety order determines that the defendant was negligent as a matter of law. *Paluch v. Baldwin Plywood & Veneer Co., supra; Wannmacher v. Baldauf Corp.* (1952), 262 Wis. 523, 55 N. W. (2d) 895, 57 N. W. (2d) 745. The existence of safety orders does not place the liability of the defendant on an absolute basis apart from negligence but prescribes a standard of the degree of care required under the circumstances. The basis of the defendant's liability is negligence whether that standard is determined as a factual question or as a question of law under the safety order and it is not inconsistent to compare the defendant's negligence with that of the plaintiff.

Whether the defense of contributory negligence should be applicable to actions of negligence under the safe-place statute is a question of public policy. True, New York in *Koenig v. Patrick Construction Corp.* (1948), 298 N. Y. 313, 83 N. E. (2d) 133, abolished contributory-negligence defense in safe-place cases involving safety orders. This case represents a

minority view. See 10 A.L.R. (2d) 853, 857. In New York contributory negligence is a complete bar to the action whereas in Wisconsin under the comparative-negligence statute, sec. 331.045, such defense is not. Moreover our safe-place statute does not create a statutory cause of action; the *Koenig Case* deems the New York statute does.

This state as a matter of public policy has been committed to the doctrine of comparative negligence. Recently we have extended the equitable doctrine of contribution to apportion liability between joint tort-feasors on the basis of their respective percentages of negligence. Gross negligence has also been abolished. *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105. The contention of the plaintiff would turn back instead of forward the pages of judicial history in this state.

### Westmont's Appeal.

Westmont cross-appeals from the judgment holding it liable to Siesel for indemnity. In the subcontract, Westmont agreed to indemnify and save Siesel harmless from all claims asserted against either or both of them arising out of any injuries sustained by any person by reason of the negligence of Westmont, its agents or employees, or by any employee of Westmont, whether or not such injury was contributed to by any failure of Siesel to comply with any law, ordinance, or regulation. The language of the contract clearly covers the present situation and spells out Westmont's liability. The argument such an indemnity provision cannot apply because Westmont was not found negligent is untenable. At the trial, counsel for Siesel took the position the contract spelled out liability on the part of Westmont without regard to its negligence, and if there were any issue under the contract of Westmont's negligence in respect to liability, such issue of negligence should be presented to the jury. Counsel for Westmont agreed there was no issue as to Westmont's negligence.

Thus the issue of negligence, if there was one, was waived by Westmont and Westmont cannot now assert there is no liability under the indemnity agreement because there is no finding by the jury Westmont was negligent.

The agreement contemplated a claim might be made against the general contractor by an employee of the subcontractor Westmont. It is true Westmont could not be sued on the theory of negligence directly by its employee, but Siesel could, and that no doubt was one of the reasons for the indemnity agreement required by Siesel. Such contracts are enforceable. See *Hartford Accident & Indemnity Co. v. Worden-Allen Co.* (1941), 238 Wis. 124, 297 N. W. 436; *Umnus v. Wisconsin Public Service Corp.* (1952), 260 Wis. 433, 51 N. W. (2d) 42.

Because two appeals and a cross appeal are before us, a question of apportioning costs arises. On Siesel's appeal, plaintiff is entitled to tax costs excluding 23 pages of his brief devoted to the plaintiff's cross appeal. On plaintiff's cross appeal, Siesel is entitled to tax as costs 10 pages of its reply brief. On Westmont's appeal, Siesel is entitled to tax costs including five pages of its reply brief.

*By the Court.*—The judgments appealed from are affirmed. Costs to be taxed in accordance with opinion.

GORDON, J., took no part.