Arthur E. WEST, Plaintiff-Appellant,

v.

MORRISON–KNUDSEN COMPANY, Inc.,
et al., Defendants-Appellees.

No. 24042.

United States Court of Appeals,
Ninth Circuit.

Nov. 8, 1971.

Hufstedler, Circuit Judge, dissented
and filed opinion.

Robert W. Gabriel (argued), of Bretz
& Gabriel, Great Falls, Mont., for plain-
tiff-appellant.

Jack L. Lewis (argued), of Jardine,
Stephenson, Blewett & Weaver, Great
Falls, Mont., for defendants-appellees.

Before HAMLEY, HUFSTEDLER and
TRASK, Circuit Judges.

TRASK, Circuit Judge.

This is an action to recover damages for personal injury filed by Arthur West, plaintiff, against a joint venture, as defendant, one of whose members was Morrison-Knudsen Company, Inc., which will hereafter be referred to as Morrison-Knudsen. It was filed in the District Court of Pondera County, Montana, and thereafter removed to the United States District Court for the District of Montana, Great Falls Division. No petition to remand was ever filed and the documentation before us would confirm jurisdiction in the United States District Court pursuant to the removal statutes, 28 U.S.C. §§ 1441–1450.

The amended complaint alleged that the defendants had contracted with the United States to construct a missile launching base in Pondera County. The defendants in turn had entered into a written subcontract with the American Bridge Division of the United States Steel Corporation to furnish and erect structural and miscellaneous steel.

The general contract between the United States Government and defendants incorporates certain safety requirements which plaintiff alleges imposes duties on Morrison-Knudsen, the general contractor, which duties are made nondelegable by the contract. A breach of some of these duties by Morrison-Knudsen, it is asserted, resulted in injury to the plaintiff who was an employee of the subcontractor. Morrison-Knudsen is thus stated to be liable in damages for these personal injuries. A motion to dismiss had been granted to an original complaint, and a second motion to dismiss was addressed to the amended complaint. Briefs were submitted on the questions raised by the amended complaint, the motion to dismiss, and certain interrogatories and answers filed in the action. The court entered an order dismissing the case and denying plaintiff all relief. West v. Morrison-Knudsen Co., 294 F. Supp. 1336 (D.Mont.1969). The court held that no recovery could be based upon the contract provisions, even though this plaintiff might be deemed a third party

beneficiary, because under the law of Montana such a beneficiary of safety clauses in a contract could not recover in the absence of a specific promise in the contract to pay damages. The court also ruled against the plaintiff on his alternate theory that recovery could be based upon the "inherently dangerous or ultrahazardous" exception to the rule that a prime contractor is not liable for the acts of subcontractors. The court found that the work performed was not within the exception. We affirm.

The appellant was injured when he slipped on the platform of a trailer from which he was unloading heavy cylinders containing gas used in welding. The trailer had been towed to the work site by a pickup truck and oil had leaked from a small engine on the trailer to the floor of the trailer causing the condition which resulted in the fall. This manner of delivering cylinders of welding gas to the work site was alleged to have been known, or should have been known, by Morrison-Knudsen.

The contract provisions upon which appellant relies are safety requirements in the United States Army Corps of Engineers Manual which appellant alleges are incorporated by reference in the prime contract between the United States and Morrison-Knudsen. Those requirements were recited in the complaint as follows:

"HOUSEKEEPING
11–35: Material, or debris shall not be strewn about in a manner which may cause tripping or other hazard.

"FLAMMABLE LIQUIDS
11–25: Accumulations of flammable liquids on floors, walls, etc., is prohibited. All spills of flammable liquids shall be cleaned up immediately.

"MACHINERY AND MECHANIZED EQUIPMENT—Inspection and testing
18–1: Before any machinery or mechanized equipment is put into use on the job, it shall be inspected and tested by a qualified person and determined to be in safe operating condition. Continued periodic inspections [shall] be made at such intervals as necessary to

assure its safe operating condition and proper maintenance.

"MOTOR VEHICLES

18–89: Definition. The term 'motor vehicle' as used in this section * * shall mean any vehicle * * * designed to be towed * * *.

"INSPECTION

18-91: No vehicle shall be placed in service until it has been inspected by a qualified person and found to be in a safe operating condition."

C.T. 18–19

The provisions are assertedly made non-delegable by the following clause of the manual:

"Compliance with the provisions of this article by subcontractors will be the responsibility of the Contractor." C.T. 19.

That all of these provisions are intended to extend to and protect this plaintiff is alleged to be made plain by the final clause quoted by appellant:

"In order to provide safety controls for protection to the life and health of employees and other persons * * * the contractor will comply with all pertinent provisions of the Manual 'Safety Requirements' approved by the Chief of Engineers 16 December, 1941 etc." C.T. 19.

Absent the contract provisions and their effect upon the rights and obligations of the parties, the Montana law clearly follows the general rule that a prime or general contractor is not liable for injuries to employees of an independent contractor. Baird v. Chokatos, Mont., 473 P.2d 547 (1970); Wells v. Stanley J. Thill & Associates, Inc., 153 Mont. 28, 452 P.2d 1015 (1969); Hackley v. Waldorf-Hoerner Paper Products Co., 149 Mont. 286, 425 P.2d 712 (1967). Nor is the rule any different where the work to be performed is inherently hazardous. Jackson v. Coast Painter & Lacquer Co. (D.Mont., November 18, 1970); Wells v. Stanley J. Thill & Associates, Inc., *supra*.

In Baird v. Chokatos, *supra*, the owners of land had agreed with 4–B's Restaurants, Inc., that a restaurant building would be constructed on their land, with the landowners and 4–B's participating in the cost. 4–B's designed the building and hired one Leslie to construct it. They were to lease and operate it upon completion. Leslie was to engage subcontractors as needed and · coordinate the construction. He engaged Ace Equipment to dig a trench for the underground lines. Baird, the plaintiff, was injured while an employee of Ace Equipment on this job. The court found Ace Equipment Company to be an independent contractor. The court posed the question for decision as:

"[W]hether or not appellant as an employee of Ace Equipment Company can hold landowners, contractee, contractor, and subcontractor liable under Montana law for personal injuries received on the job when exclusive control of means and methods of digging the ditch resided in Ace Equipment Company." 473 P.2d at 548.

The matter came before the court on a motion for summary judgment. Relying upon Wells v. Stanley J. Thill & Associates, Inc., *supra*, the court held the landowners not liable since there was no evidence that they retained control over the work area. The court then found 4–B's to be in the position of a contractee and thus not liable, noting the rule of Wells to be that:

"' * * * the servant of an independent contractor or of a subcontractor is not a servant of the contractee, ordinarily the contractee is not liable for injuries to such servant caused by the acts or negligence of the contractor, or subcontractor, or coemployee of the injured servant.' " *Id.*

The same result applied to Leslie who was interested only in the completion of the contract and insuring that the building was constructed according to plans and specifications. Concluding, the court announced the common thread miss-

ing as to each claim and the court's rationale:

"In each issue, the single element needed to attach liability to third parties is their immediate control and responsibility for means, methods, and details of constructing the project at hand, i. e., digging the ditch. Respondents did not exercise any direction over construction of the ditch and were not so obligated, therefore they cannot be held accountable for appellant's injuries." 473 P.2d at 549.

Wells v. Stanley J. Thill & Associates, Inc., *supra*, is the case which *Baird* follows. In *Wells*, the City of Belt constructed a sewer system. It engaged Thill & Associates to draw the plans and specifications and supervise the construction of the system. Fedco, Inc., was hired as an independent contractor to do the work, and the plaintiff, an employee of Fedco, was injured during construction when the wall of a trench collapsed upon him. Fedco had not shored up the wall of the trench as it was obligated to do under its contract with the city. The suit was brought against the city and Thill & Associates. The Montana Supreme Court framed the issue as follows:

"Therefore, the question became whether there is a duty on the part of the owner or his supervising engineer, running to the employee of an independent contractor, to see that the independent contractor complies with minimum safety standards promulgated by the Montana Industrial Accident Board pursuant to statute, section 92–1204, R.C.M. 1947, when the independent contractor has, in his written contract with the owner, specifically agreed to comply with such standards." 452 P.2d at 1016.

It was held that neither the city nor Thill was legally liable for the negligence of Fedco, the independent contractor.

In the case before us the United States would correspond to the City of Belt as the owner and West was an employee of a subcontractor. The complaint here alleges that West "was at all times employed by a subcontractor working for defendant." There is no allegation that the general contractor was responsible for the means, methods and details of the completion of the subcontractor's work. There is no allegation that the general contractor, Morrison-Knudsen, furnished the truck and trailer, the leaky engine or the cylinders of welding gas, or that it had the right to supervise and control the employees of the subcontractor. Indeed, answers to interrogatories make plain that neither the pickup truck nor the trailer were owned by the defendant. C.T. 52.[1] As the trial court pointed out, the complaint does not allege, and the facts do not show, that the work was inherently dangerous or latently hazardous.

The court in *Wells, supra*, indicated clearly that there was a distinction between the liability of a contractee-owner as to third persons who were *not* employees of the independent contractor and as to employees of the independent contractor. The court noted that the plaintiffs admitted the ordinary rule of nonliability of contractee-owner for acts of an independent contractor or his servants. The court continued:

"However they then go on to contend that they should fall under exceptions to that rule relating to certain third persons and do inherently dangerous or extra hazardous work.

"We cannot agree with those contentions of the plaintiffs because on closer scrutiny it appears that the exceptions apply to persons other than servants of the independent contractor." 452 P.2d at 1017.

It is important also to notice that in *Wells* there was no general contractor as

---

1. In answers to requests for admission of facts, the defendant, Morrison-Knudsen, stated under oath that it had no control over the operative detail of doing the work contracted to subcontractors, over the method and manner of the subcontractor's work, or over the trailer and engine referred to in the amended complaint.

such. There was an owner of the property upon which the improvement was to be constructed, referred to by the court as the "owner-contractee." There was the designer and supervisor, Thill, and the "independent contractor," Fedco. The only contract was one between the city and Fedco as to which the city was "contractee" and Fedco was the independent "contractor."[2] To ascertain, however, that the addition of a general contractor to the organization chart does not affect the Montana rule of non-liability of general contractors to employees of an independent contractor, one has only to carefully consider Baird v. Chokatos, *supra*, decided a year later. In that case there was an owner and a lessee (Chokatos and 4–B's), who did employ a general contractor (Leslie) who in turn engaged subcontractors as independent contractors (Ace Equipment Co.).[3]

As a matter of the law of torts, therefore, we find nothing in the allegations of the complaint (apart from the contract provisions) or the fact situation surrounding them which would give rise under Montana law to a cause of action by this employee of an independent subcontractor against the general contractor.

This is true whether the activity in which the appellant was engaged be considered ordinary or extrahazardous work.

### Effect of Contract Provisions

Appellants argue, however, that the contract provisions operate to change the basic rules of tort so that a duty by contract has been created, the breach of which creates a liability in tort for personal injury. They support their argument by the citation of cases from other jurisdictions which so hold. As stated by the court in one of these, Presser v. Siesel Construction Co., 19 Wis.2d 54, 119 N.W.2d 405, 408 (1963),

"There is a conflict of authorities whether the duty required for a negligence action can be predicated upon a contract. * * * This court has held the negligent performance or nonperformance of a duty created by contract may constitute actionable negligence."

The problem here is not the weight of authority wherever it may lie, but the law of the State of Montana.

The appellant relies upon Ulmen v. Schwieger, 92 Mont. 331, 12 P.2d 856 (1932), as its principal if not sole authority for the proposition that under

---

2. The dissenting opinion quotes from *Wells* as follows:

"[T]here were provisions in the plans and specifications that safety precautions should be taken to assure the safety of employees working on the project. Those provisions in the contract made it the duty of the contractor to take all necessary safety precautions." 452 P.2d at 1018.

This language is asserted to be an indication by dictum that the *Wells* court "does not purport to relieve the general contractor from contractually assumed obligations." We respectfully suggest that the word "contractor" which is emphasized by the dissent does not refer to the general contractor, or Thill & Associates, if the latter is considered to be in the position of the general contractor. On the contrary it refers to the *independent contractor*, Fedco. Thus the dictum does not indicate that the Montana Supreme Court in the instant case would impose a duty on the general contractor by contract or common law tort principles in favor of an employee of an independent

contractor. That this is true is demonstrated by the language of the dissenting opinion in *Wells* which opts unsuccessfully for a second exception to the Montana rule in an attempt to impose a liability on the general contractor. 452 P. 2d at 1022.

3. It is a little unclear from the opinion whether the court considered Leslie or 4–B's to be the general contractor, but it is clear that one or the other was so considered.

"4–B's also hired Leslie to construct the restaurant, obtain subcontractors as needed, and coordinate phases of construction.

\* \* \* \* \*

"4–B's is in the position of a contractee and their obligation to appellant is delineated in *Wells* \* \* \*." 473 P.2d at 548.

The court also refers to Ace Equipment Co. as a "sub" contractor, indicating that Ace contracted with a general contractor and not an "owner-contractee" directly.

Montana law a tort action by the employee of a subcontractor against the general contractor may be predicated on the contract obligations existing between Morrison-Knudsen and the United States.

In *Ulmen*, there was a road construction contract between the state and Schwieger, the general contractor. The contract contained provisions requiring Schwieger to observe safety precautions by erecting barricades and providing warning signs for the public safety. Schwieger sublet the construction of a culvert which the plaintiff, a traveler on the highway, drove his car into. The court hold that the general contractor was liable for the injuries to the driver on the highway.

*Ulmen* must be read against the background of the facts under which it arose and the legal proposition which it decided. First of all, it was not an action by an employee of a subcontractor suing the general contractor for injuries. It was an action by a third party traveler on a public highway against the general contractor. Second, the basis for the action was not asserted to be that the independent contractor provided or negligently maintained equipment, as it is here. Instead, the basis of the action in *Ulmen* was that the general contractor was in possession and in charge of the job site where the contract was being performed. He had an affirmative duty under ordinary common law principles to keep it safe for the traveling public, as well as a duty by contract to do so. Morrison-Knudsen, however, was not in control of the means and manner of performing the work, nor was it the owner or supplier of the trailer upon which West was injured.

The court's statement in *Ulmen* that an exception to the rule of non-liability for the general contractor exists "where he has assumed a specific duty by contract," may not properly be read to apply to protect the employee of a subcontractor. That statement is as follows:

"Another exception to the general rule, that an employer doing a piece of work through an independent contractor is not liable for the latter's negligence, is where the employer has assumed a specific duty by contract. In such a case he cannot evade liability by employing another to do that which he has agreed to perform."

■ The first exception was the "nondelegable duty" rule of extrahazardous activities. As we have seen, the general contractor may not, by contracting with an independent contractor, "delegate" his liability to the subcontractor for such hazards and thereby exonerate his own. But this liability exception in Montana applies only to third persons who are not employees of the subcontractor. Jackson v. Coast Painter & Lacquer Co., *supra*; O'Leary v. James & Wunderlich, 192 F. Supp. 462 (D.Mont.1960), aff'd, 288 F.2d 462 (9th Cir. 1961); Baird v. Chokatos, *supra*. The other "exception" which the *Ulmen* court refers to is *likewise* an exception which applies to third persons who are not employees of the independent contractor. In fact, that was the problem before the court and the case which it decided. That this is the meaning of the Montana Supreme Court's second "exception" is made clear by an examination of the three cases it cites in support of its statement.[4] None of them is a case in which an employee of a subcontractor is permitted to recover. In each case the issue concerns the right of a third person, other than an employee of a subcontractor, to recover.

It also is clear from the cases which follow *Ulmen* that it did not represent a holding that contract provisions of the kind present here changed the law of Montana. An example is O'Leary v. James & Wunderlich, *supra*.[5] That was

4. Atlanta & Florida R. Co. v. Kimberly, 87 Ga. 161, 13 S.E. 277 (1891); St. Paul Water Co. v. Ware, 83 U.S. (16 Wall.) 566, 21 L.Ed. 485 (1872) (incorrectly cited as 18 Wall. 566); Scott Construction Co. v. Cobb, 86 Ind.App. 699, 159 N.E. 763 (1928).

5. This decision is by one of the resident United States District Judges for the District of Montana. In addressing a

an action by one O'Leary against James & Wunderlich for damages for injuries in painting certain gates. James & Wunderlich was the general contractor under a contract with the United States Department of Interior for construction of a dam. The general contractor entered into a written contract with Hakes Erection Co. for painting, and Hakes in turn engaged O'Leary, who actually did the work.[6] The contract between the general contractor and the United States contained substantially similar safety provisions for "employees" as are contained in the Morrison-Knudsen contract.

The district court in O'Leary granted the defendant's motion for a directed verdict. It pointed out that there was no contention that defendants furnished an unsafe place to work or that there were lurking dangers in the premises.[7] "The negligence claimed is the failure of the defendants to ascertain that the independent contractor Hakes was performing inherently dangerous work in an improper manner." 192 F.Supp. at 470. The court then reviewed the cases concerning the liability of a contractor to the employee of a subcontractor, none of which apply here, and distinguished Ulmen v. Schwieger, *supra.* The court concluded:

"Does the non-delegable duty of a contractor to the public extend to one who by written contract has agreed to perform according to specifications the very work from which the alleged injury arose? It does not appear to me that the rule of Ulmen v. Schwieger may be so extended, even if we assume that the work which O'Leary was performing was inherently dangerous." (footnote omitted) 192 F.Supp. at 474.

This court affirmed·the decision of the District Court for the District of Montana in O'Leary v. James & Wunderlich, 288 F.2d 462 (9th Cir. 1961). We recognized the distinction made by Ulmen v. Schwieger, as between "third parties" where the liability of the general contractor may attach, and employees of a subcontractor where it may not. The rationale of *O'Leary* has more recently been followed by the Montana Supreme Court in Baird v. Chokatos, *supra.*

■ Although the plaintiff does not predicate recovery on a contract theory, we agree with the trial court that such an action may not be maintained. The plaintiff is at best an incidental beneficiary under Hensley v. United States, 279 F.Supp. 548 (D.Mont.1968). A cause of action does not exist in favor of such a claimant.

The judgment of the trial court is affirmed.

legal problem such as this where there is some difference of opinion as to the interpretation of the controlling Montana decisions, the opinion of the district judge sitting there is entitled to particular deference. Nashua Mfg. Co. v. Hooper Trailer Sales, Inc., 445 F.2d 1321 (9th Cir. June 24, 1971); Turnbull v. Bonkowski, 419 F.2d 104, 106 (9th Cir. 1969). *Cf.* Hamman v. United States 267 F.Supp. 411, 415 (D.Mont.1967).

6. There is some dispute as to whether O'Leary was a subcontractor of Hakes Erection Co. or an employee. He was found to be an employee by the State Industrial Accident Board. He was carried on Hakes' payroll for a portion of the time and the business was wholly owned by O'Leary. It was clear that the

plaintiffs did not contend that the defendants exercised any supervision or control over O'Leary's work, but rather that the defendants negligently failed to exercise control.

7. Although the specifications of negligence of the amended complaint alleged generally that defendant failed to provide the plaintiff with a safe place to work, the specific allegations charged that the cause of injury was a slippery trailer floor due to leaking oil, i. e., a faulty piece of equipment. But there was no allegation that defendant furnished the equipment or was responsible for its becoming faulty, or that defendant was in charge of the delivery of the cylinders of gas being unloaded. *See* footnote 1, *supra.*

**500**

HUFSTEDLER, Circuit Judge (dissenting):

I respectfully dissent. The majority opinion sustains the district court's dismissal of West's complaint on the ground that it did not state a claim for relief cognizable under Montana law. In my view, those conclusions rest on a misreading of the controlling Montana authority.

As the majority opinion acknowledges, Montana law recognizes exceptions to the general rule that a general contractor is not liable for injuries to third persons caused by an independent subcontractor's negligence. One exception fixes liability upon the employer or general contractor where the work to be performed is inherently dangerous. (A. M. Holter Hardware Co. v. Western Mtge. & Warranty Title Co. (1915) 51 Mont. 94, 149 P. 489; Fegles Const. Co. v. McLaughlin Const. Co. (9th Cir. 1953) 205 F.2d 637.) A second exception imposes liability on the general contractor when he assumes a specific duty by contract; he cannot avoid liability for failing to perform his duty by subcontracting with another for performance. (Ulmen v. Schwieger (1932) 92 Mont. 331, 12 P.2d 856.) The majority opinion finds an exception to the second exception, whereby employees of an independent contractor are excluded from the class of persons for whose benefit the exception was created. The principal source of that conclusion is Wells v. Stanley J. Thill & Associates, Inc. (1969) 153 Mont. 28, 452 P.2d 1015. The court there held that neither the municipality-owner nor its supervising engineer had a duty to an employee of an independent contractor to require the contractor to comply with statutorily or contractually imposed safety standards. Wells would control this case if West had sued the United States as contractee, but Wells does not purport to relieve the general contractor from liability that it had assumed in its prime contract. The Wells dictum is to the contrary: "[T]here were provisions in the plans and specifications that safety precautions should be taken to assure the safety of employees working on the project. Those provisions in the contract made it the duty of the *contractor* to take all necessary safety precautions." (*Id.* at 34, 452 P.2d at 1018. Emphasis added.)

The *Wells* dictum is reinforced by the Montana Supreme Court's decision in Ulmen v. Schwieger, *supra. Ulemen* applied the exception for contractually assumed duties of care and is persuasive authority in favor of West's position.

In *Ulmen*, the Montana state highway commission let the general contract for construction of a highway project to Schwieger. The contract obligated Schwieger to erect barricades and warning lights for the public's safety. Schwieger sublet the culvert excavation and construction work. Ulmen was injured when his automobile crashed into an unguarded excavation and culvert. The court rejected Schwieger's contention that he could not be liable for his subcontractor's negligence. It applied both exceptions to the independent contractor rule in upholding the judgment against Schwieger. In respect to the second exception, the court said:

"Another exception to the general rule, that an employer doing a piece of work through an independent contractor is not liable for the latter's negligence, is where the employer has assumed a specific duty by contract. In such a case he cannot evade liability by employing another to do that which he has agreed to perform." (92 Mont. at 348, 12 P.2d at 860).

The court ruled that the safety clause of the prime contract was admissible in evidence to show Schwieger's duty to Ulmen.

On rehearing, the court held that the subcontractor who had built the culvert was not jointly liable for Ulmen's injuries, because "the original contractor, Schwieger, was at all times in control

of the entire projected highway, the dangerous condition existing at the culvert being but a part thereof. Schwieger was, *under the contract*, required to maintain the barrier and detour sign to protect the public from the dangerous condition created by the excavating for the installation of the culvert * * *." (92 Mont. at 355, 12 P.2d at 862. Emphasis added.)

I cannot agree with the majority opinion that *Ulmen* can be distinguished on the ground that the person injured was a member of the general public, rather than an employee of an independent contractor. The focal point of the inquiry in *Ulmen*, as it is here, is this: For whose protection were those contractual duties imposed and assumed? In *Ulmen*, among the persons exposed to injury, if the contractual covenants were not performed, were the people using the highway. In our case, the persons exposed to injury by nonperformance of the safety clauses were the workmen on the job, whoever employed them. The general public would not be expected to be exposed to injury on a missile construction site, assuming the public had any access to the site. There is little point to creating a duty in favor of the persons who are the least likely to be injured by breach of safety covenants and to exclude from that class those persons who would be regularly exposed to such risks.

The district court assumed and the majority appears to agree that West was obliged by Montana law to sue on the prime contract as a third party beneficiary and that his action on the contract was foreclosed unless the prime contract contained an express promise to pay employees of subcontractors for injuries proximately caused by a breach of safety obligations undertaken by the general contractor in the prime contract.

The first assumption is contrary to Montana law. If a defendant's negligent breach of contract also constitutes a tort, the Montana Supreme Court permits the plaintiff to elect either remedy.

(*See* Garden City Floral Co. v. Hunt (1953) 126 Mont. 537, 543, 255 P.2d 352, 356.) None of the cases cited by the appellees purports to state a different rule. In each of them either privity existed or the particular contract in issue imposed no standard of care upon the defendant.

The second assumption is based on Hensley v. United States (D.Mont.1968) 279 F.Supp. 548, a case that is not in point, and upon our decision in National Surety Co. v. Ulmen (9th Cir. 1933) 68 F.2d 330, cert. denied (1934) 292 U.S. 624, 54 S.Ct. 629, 78 L.Ed. 1479, cited in *Hensley*, that is directed to a completely different issue than that presented both here and in *Ulmen*.

Hensley was injured by the negligence of his contractor-employer. He sued his employer as a third party beneficiary of safety clauses incorporated in a contract between his employer and the United States because Montana's workmen's compensation law barred his pursuing a negligence action. Relying upon this court's decision in National Surety Co. v. Ulmen, *supra*, *Hensley* held that the employer could not sue as a third party beneficiary where the contract did not contain an express promise to pay damages. *National Surety Co.* is a companion case to Ulmen v. Schwieger, *supra*.

In *National Surety Co.* the question was whether Montana law permitted Ulmen to satisfy the judgment he had theretofore recovered from Schwieger by resort to the bond posted by Schwieger's surety. We concluded that the surety's obligation was fixed by the principal's promises (Gary Hay & Grain Co. v. Carlson and Fidelity & Deposit Co. (1927) 79 Mont. 111, 123, 255 P. 722, 725) and that that obligation could not be extended to include Ulmen because Schwieger had not expressly so covenanted with third persons. The final resolution of the Ulmen-Schwieger dispute demonstrates that the surety's liability for his principal's negligence cannot be used to measure the principal's liability.

The surety was absolved of liability because the general contractor had not specifically promised to pay damages, but the contractor remained liable to injured third parties.

*Hensley* is thus inapposite for three reasons. First, it is based on our interpretation of Montana's surety law, not on its law relating to independent contractors. Second, Hensley's action was on the contract itself; it was not and could not have been maintained as a tort action. Third, to the extent that dicta suggest that there need be an express promise to pay an injured employee before liability in tort can be imposed on a general contractor for failure to perform duties assumed in a prime contract, it is contrary to the *Ulmen* decision.

The *Wells* holding, as contrasted with its dictum, states a rule of law regulating the impact of vicarious liability. The *Wells* dictum and the rationale of *Ulmen* recognize that a rule based on vicarious liability does not control when a general contractor has itself assumed specific duties in respect of safety standards. To impose liability for breach of those contractually assumed duties is not to impose vicarious liability upon the general contractor; it is an enforcement of the general contractor's own duties.

A holding that the general contractor is relieved of liability for breach of duties that it assumed toward the United States deprives the latter of an element of its bargain. We cannot say that the intent of that bargain excluded protection of employees of subcontractors injured by the failure of the general contractor to fulfill its safety commitments. No policy consideration underlying the inherently dangerous work exception purports to authorize abrogation of the prime contract's safety provisions.

It is, of course, presently immaterial whether or not West can prove the allegations of his complaint.

I would reverse and remand the case for further proceedings consistent with *Ulmen* and the views herein expressed.