HERBERT M. HACKLEY, Plaintiff and Appellant, v. WALDORF-HOERNER PAPER PRODUCTS CO., GROVER-DIMOND ASSOCIATES, Defendants and Respondents.

No. 11085.
Submitted February 7, 1967.   Decided March 23, 1967.
425 P.2d 712.

Lee A. Jordan (argued), Missoula, for appellant.

Garlington, Lohn & Robinson, Sherman V. Lohn (argued), Missoula, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a directed verdict given at the close of appellant's case for Grover-Dimond Associates and from a jury verdict for the Waldorf-Hoerner Paper Products Company.

The appellant Hackley brought this action seeking damages for injuries sustained in a fall while working for the Bumstead-Woolford Company where he was employed as a steamfitter. The appellant originally brought suit against three defendants with the third defendant, Hightower & Lubrecht Construction Company, being taken out of the case at the end of plaintiff's case by a directed verdict.

The respondent, Waldorf-Hoerner Paper Company in 1959 began an extensive expansion of its pulp mill located in Missoula County. Grover-Dimond Associates, an engineering architect firm, was employed by respondent to prepare plans and specifications for the new plant and to generally oversee the construction. The part of the plant expansion of import to this case concerns a building built to house No. 2 turbine. Throughout the construction program personnel from Grover-Dimond and from the respondents' home office were on the job site checking on the construction.

Once the plans were drawn Grover-Dimond broke the job down into different categories, structural, mechanical, piping, etc., and then put these jobs out either on bids or in some cases on negotiated contracts. Each of the companies dealt with for the job received a purchase order which served as a contract, and during the years of the construction as many as 15 or 20 contractors were working on the project each as an independent contractor for its particular phase. Hightower & Lubrecht Construction Co. did construction work which included the erection of a superstructure for the housing of the power plant. The work of this company was according to plans and specifications drawn by Grover-Dimond, and began in the fall of 1959 and completed early in 1960. At the time of the accident, July 25, 1960, the Hightower & Lubrecht Company had some months

before turned over the building to those who were to do the installation of the power plant.

During the construction period it was routine for supervisory personnel of all the independent contractors on site to meet with several of Waldorf-Hoerner's officials to discuss job problems and to see to it that each contractor knew what was to be done during the next week. In this manner they were able to coordinate the work and also the respondents' officials were kept current on the construction progress. There was no testimony introduced that officials of respondent via this meeting exercised dominion over the various independent contractors on the job. Rather it was a method of coordination of the construction.

The appellant had worked in the turbine pit for several days prior to the accident connecting pipes. The turbine pit was some 14 feet in depth with access only through two manholes at the opposite ends of the pit. In designing the pit, the Grover-Dimond Associates provided a steel rung ladder as a means of access which the testimony showed was for the use of maintenance personnel once the turbine was in operation. This means of access was designed so that the cover was flush with the floor with the 13 steps of the ladder beginning from the first step six inches from the floor at a rate of one step every 12 inches leaving the 13th step 19¾ inches from the top of the pit. The appellant and his fellow employees, who worked in the pit doing the various job necessary to install the turbine, used the ladder from which he fell as a means of access to and from their work. The appellant testified that during the day when he was injured that he had been up and down the ladder numerous times, and that when he was injured it was at quitting time. He describes the accident as follows:

"A. Well, I was in the bottom of the pit, and the welder was out. It was around quitting time and he said 'either let's break down or let's take up, one or the other,' which he meant to take the gauges off and roll the hose up and take them to the store-

room. That was company policy. Them things had to be locked up overnight in a storeroom.

"Q. So what did you do? A. I started up this pit and when I got to the top, I reached over the ledge and there was a, [ledge] this was to pull myself up, to pull myself against the ledge, and when I did my hands slipped and I went back through the pit on the concrete floor."

From this fall the appellant suffered serious injuries. His feet including his heels were broken and he suffered a broken back.

The respondent, Waldorf-Hoerner maintained throughout the case that each of the various contractors were independent general contractors and that with regard to the appellant this suit was simply an action by an employee of a third party (Bumstead-Woolford) against Waldorf-Hoerner, the owner of the premises, the landlord. The appellant contended throughout that Waldorf-Hoerner was in reality a general contractor who controlled the entire project and was responsible for the condition of the premises.

During the course of the trial appellant tried to show that several of the officials of respondent, Waldorf-Hoerner, to-wit, Mattison & Lodendorf, were on the job site at all times, that they exercised control over the various general contractors, in addition to the supervisory personnel of Grover-Dimond. Appellant produced testimony that three days prior to the accident the job steward of the Bumstead-Woolford employees protested the conditions in the pit, alleging an oily floor, lack of light, and the ladder in question, to Mr. Mattison, and that Mattison agreed to have the conditions fixed. On the day of the accident appellant's job steward made a complaint to a Mr. Lodendorf about the conditions, and that Lodendorf agreed to have the conditions fixed, and made more safe.

The respondent introduced testimony to the effect that Mr. Mattison was on the job as a material expediter, and that Mr. Lodendorf was a combustion expert and on the job site to

analyze fuel and the power problems of the system being installed.

During the course of the trial, appellant unsuccessfully tried to introduce a pamphlet containing the standards of the American Standards Association to show that the ladder the appellant fell from was not built to the safety standards required by the pamphlet, too, that an effort was made to show that the ladder construction on the respondents' premises did not meet the minimum Safety Standards for the Construction Industry in Montana as set forth in our Industrial Accident Code, sections 41-1703, 41-1706, R.C.M.1947. In addition, appellant tried to introduce evidence, which was denied, that respondent Waldorf-Hoerner immediately after the accident had side rails installed as a safety precaution alongside the ladder in question; in addition appellant was unsuccessful in his effort to introduce pictures taken some 13 days after the accident of the construction area where the accident occurred.

The appellant sets forth eight issues for review, three of which he labels as major issues. They are:

"1. Admissibility of the Minimum Safety Standards for the Construction Industry in Montana as promulgated by the I.A.B. pursuant to direct legislative authorization, and the Court's refusal to allow their use for ANY purpose.

"2. Admissibility of the standards of the American Standards Association concerning fixed iron rung ladders, and the Court's refusal to allow their use for ANY purpose.

"3. Correctness of the Court's action in denying plaintiff's motion for a directed verdict on the question of liability against the defendant Waldorf-Hoerner Paper Products Company.

"4. Correctness of the Court's action in granting the motion for a directed verdict of Grover-Dimond Associates, the architectural and engineering firm which drew the blue prints and plans for the pit and ladder involved in this accident, and oversaw and checked the construction work as it progressed.

"5. Correctness of the Court's action in refusing plaintiff's proof that it was Waldorf-Hoerner employees who actually repaired the ladder from which plaintiff fell, within hours after the accident.

"6. Correctness of the Court's action in refusing to admit plaintiff's pictures of the pit and ladder involved in this case taken 13 days after the accident.

"7. Correctness of the Court's action in admitting defendants' pictures, taken 5 years after the accident, not of the accident scene, or anything similar thereto.

"8. The Court erred in giving instructions on 'assumption of risk'."

Considering the ruling of the district court in refusing any testimony on the minimum Safety Standards for the Construction Industry, section 41-1702, R.C.M.1947, we must first examine the purpose and the coverage of the statute. Such statute provides:

"(a) Every employer shall furnish a place of employment which shall be safe for the employees therein and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such places of employment safe, and shall do every other thing reasonably necessary to protect the life and safety of such employees;

"(b) Every employer and every owner of a place of employment, shall repair, and maintain the same as to render it safe. If [In] any civil suit or action brought against a landlord by an employee or by a member of the public for recovery of damages for injury or death the provisions of this section shall not be construed to apply or in any way increase or affect the present liability of said landlord."

It should be noted that the section in the first instance is directed at every employer, and that employer's duty to provide a safe working place for his employees. A thorough and careful review of this record does not make

Waldorf-Hoerner an employer of the injured appellant, rather, the evidence produced leaves but one conclusion and that was that the appellant was the employee of the Bumstead-Woolford Company which had a general contract on the project. We then look to subsection (b) to see if under its provisions a case can be made for appellant. This section speaks of "every employer" and "every owner of a place of employment," which under the facts in this case would make Waldorf-Hoerner a landlord. The limitation of this subsection of a "civil suit * * * by an employee or by a member of the public" against a landlord makes this an action by an employee of a third party against the owner of the premises, Waldorf-Hoerner.

■ This is not to say that this court in a proper factual case will not allow the admittance of safety regulations. Under facts presented here we cannot hold the right to oversee that the work of the various independent contractors proceeds satisfactorily imposes on the respondent the duty to insure that the contractor's work is done in compliance with all the various safety codes.

This court recently allowed the admittance of a safety code provision when we recognized the "Scaffolding Act," section 69-1401, R.C.M.1947, as being properly considered by the jury. Pollard v. Todd, 148 Mont. 171, 418 P.2d 869.

■ With regard to the second alleged error, the refusal to allow the admission into evidence of the pamphlet standards published by the American Standards Association, we find that the district court properly found in this case that the evidence was inadmissible. While there are cases holding to the contrary McComish v. DeSoi, 42 N.J. 274, 200 A.2d 116, we believe the view to be the minority view is not as well reasoned as that of the majority of our sister states. The majority view is set forth in 75 A.L.R.2d 778, 780, and is:

"The majority view is that evidence of codes or standards of safety issued by governmental bodies as advisory material,

but not having the force of law, is not admissible on the issue of negligence * * *."

■ In this case the question of whether the ladder was properly designed and installed is not difficult for the average juror to consider. It involved no difficulty to the ordinary juror in determining the issue without special reference to the rules and regulations. Here too, there were numerous witnesses who testified that the ladder was not standard, not approved and unsafe. In addition the jury had before it throughout the trial a full-sized sketch of the ladder. At the most the evidence proposed would have been cumulative and as such admission would have been discretionary with the trial court.

■ We find no merit to appellant's third issue concerning the court's failure to direct a verdict against the respondent. Bumstead-Woolford here in the fullest sense of the phrase is an independent contractor. Although Waldorf-Hoerner had supervisory personnel and specialists on the job site and brought the various contractors together each Friday to see that the work progressed these roles were not shown to be of sufficient supervisory character to negate our conclusion that Bumstead-Woolford was an independent contractor.

■■ Generally a landowner is not liable for injuries suffered by servants of an independent contractor. 57 C.J.S. Master and Servant § 600. The position of the appellant here is that of an invitee or a business visitor lawfully on the premises and this court in the case of Cassaday v. City of Billings, 135 Mont. 390, 340 P.2d 509, 510, summarized the law in Montana as follows:

"It is well-established in Montana that a landowner is obligated toward an invitee to either use ordinary care to have the premises reasonably safe, or to warn the invitee 'of any hidden or lurking danger therein'. Milasevich v. Fox Western Montana Theatre Corp., 118 Mont. 265, 270, 165 P.2d 195, 197, and see Restatement, Torts, Negligence, § 343. He is not an insurer against all accidents and injuries to such persons while there."

See also Chichas v. Foley Brothers Grocery Co., 73 Mont. 575, 236 P. 361.

While this state has not had to consider the matter there is an exception to the rule which arises when a landlord has retained control over the property on which work is being performed. The landlord then has the duty to use ordinary care, so that the premises will be reasonably safe for the independent contractor's servants. Dillingham v. Smith-Douglass Co., 261 F.2d 267, 269 (4th Cir. 1958) ; 57 C.J.S. Master and Servant, § 603; 38 Am.Jur., Negligence, § 94. For the purposes of this case it must be concluded that Bumstead-Woolford Co. was an independent contractor and the disposition of the case is governed by the general rule, which under the present circumstances free a landowner from liabilities for injuries suffered by an independent contractor's servants, and not by the exception.

On the fourth issue of granting the directed verdict for the Grover-Dimond Associates at the end of appellant's case, we find no error. Appellant relies upon an Illinois case against an architect firm where a school gym collapsed during a remodeling, due to the design being in violation of the law. Miller v. DeWitt, 59 Ill.App.2d 38, 208 N.E.2d 249. With this holding we have no argument, but in this case we are presented with an entirely different fact situation. Grover-Dimond's designed ladder did not collapse, nor did it fail to function for the purpose designed. Here all the alleged defects were open, obvious, and there was no concealment or trap of any kind.

There being no showing of any latent defect or concealed danger in the design of the ladder the court properly directed a verdict for Grover-Dimond Associates. Inman v. Binghampton Housing Authority, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895, 59 A.L.R.2d 1072 (1957).

Appellant complains that the court erred in not allowing him to produce evidence that shortly after the accident the respondent had hand rails put up alongside the ladder

as a safety measure. While recognizing that evidence of subsequent improvements cannot be introduced to show that the defendant was negligent, the appellant here attempted to introduce such evidence for the purpose of showing Waldorf-Hoerner's dominion and control over the premises. Numerous efforts were made throughout the trial to get this evidence before the jury, bringing adverse rulings each time by the court. However, it should be noted that just at the end of the trial appellant successfully maneuvered to get the very evidence here complained of being excluded, into the record. We cannot see how he can now allege prejudice to his case. Such evidence, in a proper case, can be made admissible, but this is not such a case. May v. City of Anaconda, 26 Mont. 140, 66 P. 759; Cochran v. Harrison Memorial Hospital, 42 Wash.2d 264, 254 P.2d 752.

Issues six and seven are concerned with the court's refusal to not admit certain pictures and in allowing others to be admitted. We find no error in the court's rulings in these matters. This court has long followed the principle that the trial court has wide discretion in the admission of photographs. Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4; Gobel v. Rinio, 122 Mont. 235, 200 P.2d 700; Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025. We have carefully reviewed all the matters desired to be covered by the photos refused and find the evidence fully described by witnesses and diagrams.

Last but not least is appellant's contention that the court erred in giving instructions on "assumption of risk." While not directing our attention to any particular instruction we must point out that appellant begins his argument on this alleged error based upon an assumption we have long disposed of in this case, and that concerns specification of error No. 1, the refusal to admit the minimum safety standard in this case. We have no argument with the cases cited if they were applicable to the facts in this case, but they are not.

We find that the district court included much of what appellant desired in covering this matter when the court adopted instructions offered by appellants which became court's instructions 23 and 24. It would appear to us that when read with court's instruction 21 A, the appellant was properly protected.

The judgment and verdict of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and CASTLES concur.